IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| : | CIVIL ACTION |
| : |  |
| IN RE GREGORY JOSEPH MILLER : |  |
| AND TAMMY LYNN MILLER : |  |
| : | NOS. 12-503 & 12-830 |

MEMORANDUM ORDER

AND NOW, this 28th day of June, 2012, upon consideration of (1) Ettinger et al.'s Initial

Appeal Brief (12-cv-503, Doc. No. 4), (2) the Millers' Reply Brief (12-cv-503, Doc. No. 8), and

(3) the Millers' Brief in Support of their own appeal (12-cv-830, Doc. No. 6), and after careful

review of the record on appeal, it is hereby ORDERED that the U.S. Bankruptcy Court for the

Eastern District of Pennsylvania's decision to impose a $20,000 sanction on Neil Ettinger; his

law firm (Ettinger & Associates, LLC); and his counsel in the underlying adversary proceedings

(Demetrios Tsarouhis) is REVERSED and the Court's Order of December 19, 2011 is

VACATED accordingly.

The Millers failed to comply with the so-called "safe harbor" provision of Federal Rule of

Bankruptcy Procedure 9011, so the sanctions awarded by the Bankruptcy Court cannot stand.

Because it is too late to cure the safe harbor violation, we see no reason to remand this matter for

further proceedings.  The Clerk of Court is directed to close these two matters (12-cv-503 and

12-cv-830) for statistical purposes.

I.      Factual Background and Procedural History[1]

These two related bankruptcy appeals (12-cv-503 and 12-cv-830) arise out of a $20,000

sanction levied by the U.S. Bankruptcy Court for the Eastern District of Pennsylvania

---

[1]We decide this matter on procedural grounds and tailor our discussion accordingly.

("Bankruptcy Court" or "the Court") pursuant to Federal Rule of Bankruptcy Procedure 9011, the Bankruptcy Rules' equivalent to Civil Rule 11.  In essence, the Bankruptcy Court sanctioned Neil Ettinger ("Ettinger"), his law firm (Ettinger & Associates, LLC), and his counsel in the underlying bankruptcy matter (Demetrios Tsarouhis) for continuing to press an adversary proceeding they knew to be meritless against debtors-seeking-discharge Gregory and Tammy Miller ("the Millers").  In one appeal, Ettinger proclaims that any sanction was too much.  In the other, the Millers urge that $20,000 was too little.  We agree with Ettinger, but solely on procedural grounds; we do not reach the merits of the Bankruptcy Court's decision to sanction.

The parties have some history, which we recount as necessary for the purposes of these appeals.  Neil Ettinger is an attorney.  In January of 2008, Mrs. Miller hired Ettinger's law firm (Ettinger & Associates, LLC) to handle a landlord-tenant matter involving Mrs. Miller's mother and stepfather (the Brauns).  In December of 2009, after almost two years of litigation, the Millers paid the Brauns $9,500 to resolve the dispute.  Unfortunately for the Millers, they had run-up a $43,000 bill, give or take, with Ettinger & Associates.[2]  Although the Millers had already paid Ettinger close to $20,000 for his services, Ettinger wanted the rest of the money he believed the Millers owed him (approximately $23,000).

Hard times had befallen the Millers, and they found themselves unable to pay Ettinger as promptly as he would have liked.  Pursuant to a state court order, the Millers were making "good faith" payments to Ettinger of $100 to $200 per month, but Ettinger was not satisfied.  In March

---

[2]Ettinger's billing practices came under some scrutiny in this matter.  For example, the Bankruptcy Court chastised Ettinger for unilaterally raising both his hourly billing rate and the interest rate on the Millers' past-due balance above the rates prescribed in the fee agreement. (See Trial Tr. 195, Apr. 19, 2011 (describing Ettinger's position on these issues as a "bootstrap argument," "border[ing] . . . on contempt," and "ridiculous."); No. 10-2110 (Bankr. E.D. Pa.), Doc. No. 87).

of 2010, Ettinger sued the Millers in Pennsylvania state court for his unpaid legal fees, asserting claims for breach of contract and *quantum meruit*.  ('830 R. at 7 Ex. D).  The next month, in April of 2010, the Millers filed for Chapter 7 bankruptcy in the Eastern District of Pennsylvania's Bankruptcy Court.  ('830 R. at 2).  Ettinger, worried that the Millers' $23,000 debt to his law firm would be discharged, filed an adversary complaint in the Millers' bankruptcy proceedings.  ('830 R. at 6).  Demetrios Tsarouhis represented Ettinger in these adversary proceedings.  (Id.).  According to Ettinger's complaint, the Millers fraudulently induced Ettinger into continuing to provide them with legal services, and this fraud rendered the Millers' debt nondischargeable. (Id.).

Ettinger's adversary complaint was filed on August 20, 2010.  On January 31, 2011, before the completion of discovery, the Millers (through counsel) filed their first Rule 9011 motion for sanctions.  ('830 R. at 9).  Specifically, the Millers' motion alleged that, in violation of Rule 9011(b)(1):

> [Not] only was the adversary filed to harass and cause the Debtors [the Millers] to incur additional fees and further delay, said action was taken with malice and for absolutely no reason other than to allow Attorney Ettinger the opportunity to retaliate against the Debtors based upon his anger and the disagreements that he and the Debtors had over the excessive fees he charged them during the litigation process which he turned a mole hill into a mountain for no other reason than to bill the clients for services that were both unnecessary and taken for the sole purpose of generating legal fees.

(Id. ¶ 13).  The Millers served this Rule 9011 motion on the parties-to-be-sanctioned via mail at about the same time they filed the motion with the court.  (No. 10-2110 (Bankr. E.D. Pa.), Doc. No. 34).

The next day, on February 1, 2011, the Millers' lawyer filed a "Praecipe to Withdraw Motion for Sanctions" with the Bankruptcy Court and also sent a copy to Ettinger and Tsarouhis.

('830 R. at 10).  The praecipe asked the Bankruptcy Court Clerk to "[k]indly withdraw the Motion for Sanctions . . ." without explaining why.  (Id.).  On February 23, 2011, the Millers re-filed and re-served their Rule 9011 motion.  ('830 R. at 12).  This second motion for sanctions was substantively identical to the first.  (Compare '830 R. at 9 with '830 R. at 12).  Two days later, on February 25, 2011, the Bankruptcy Court issued a Scheduling Order which, in part, informed the parties that "the 9011 Motion is premature, shall be held in abeyance, and shall not be heard until after the merits of this adversary proceeding have been determined."  ('830 R. at 14).

Although not stated in the adversary complaint, Ettinger apparently believed (or at least guessed) that the Millers had consulted with a bankruptcy attorney at some point during Ettinger's representation of the Millers, and this bankruptcy attorney might have told the Millers that they could file bankruptcy to avoid paying Ettinger's bill.  After some initial confusion, the Millers revealed that they had, in fact, previously met with a Pennsylvania bankruptcy attorney named James Kutkowski ('830 R. at 11).  According to the Millers, they consulted Kutkowski in the context of refinancing, not to discuss filing for bankruptcy.  (Id.).

Kutkowski was deposed on March 18, 2011.  ('503 R. at 23 (Exhibit to Motion)).  In his deposition, Kutkowski admitted that he's "a bankruptcy attorney."  (Id. at 5:14-16).  Regarding his interaction with the Millers, Kutkowski initially stated that, while he "might" have discussed bankruptcy with Mr. Miller, he "really truthfully [did not] remember."  (Id. at 17:7-18:3).  After a short break, Kutkowski reversed course.  In response to a follow-up question ("you state that you may have lightly touched upon bankruptcy?"), Kutkowski testified that "I probably, I'm fairly confident that I did discuss briefly the option of bankruptcy with [Mr. Miller]."  (Id. at 18:6-22).  As discussed *infra*, in the eyes of the Bankruptcy Court, Kutkowski's March 18th deposition

4

marked the turning point from "obnoxious, obstreperous, unprofessional behavior to sanctionable

behavior" on the part of Ettinger and Tsarouhis.  (Hearing Tr. 19:15-19, Oct. 24, 2011).

According to the Bankruptcy Court:

> The linchpin, the pivot on which my decision will turn, is March 18, 2011.  That's
> the date Mr. Kutkowski was deposed.  That's the date the plaintiffs knew full well
> that he didn't talk to the Millers about bankruptcy.  And so the result of this . . . I
> grant the motion for sanctions [for plaintiff's actions] taken after March 18, 2011 .
> . .

(Id. at 14:18-24).

The trial on Ettinger's adversary complaint took place on April 19, 2011.  Kutkowski

testified that he did not remember whether or not he discussed bankruptcy with Mr. Miller, but

"it is reasonable that it may have come up."  (Trial Tr. 41:4-8, Apr. 19, 2011).  At the end of the

trial, the Bankruptcy Court ruled from the bench in favor of the Millers and against Ettinger on

the dischargeability issue.  (Id. at 191).  The Court recounted "twelve reasons" Ettinger and his

attorney gave for nondischargeability, "all of them wrong."  (Id. at 191-94).[3]  Regarding Mr.

Miller's meeting with Kutkowski, the Court found that Kutkowski "didn't recall whether he

talked to them about bankruptcy.  Maybe he did; maybe he didn't; that's a non-issue."  (Id. at

192:2-6).  After handing down the decision, the Court then set a hearing date for the Millers'

pending Rule 9011 motion.  (Id. at 197-98).

The next day, April 20, 2011, the Court issued a Scheduling Order confirming the hearing

date for the Rule 9011 motion and ordering the Millers to "file a revised 9011 Motion on or

before May 6, 2011," with Ettinger's response due by May 23, 2011.  (No. 10-2110 (Bankr. E.D.

---

[3]Two days later, the Court reiterated that "[p]laintiff offered twelve reasons why it
might be successful in objecting to the dischargeability of the debt owed by Debtors/Defendants,
none of which were accurate or correct and some of which were offensive."  (No. 10-2110
(Bankr. E.D. Pa.), Doc. No. 87).

Pa.), Doc. No. 85).  The Millers did as instructed, filing (and serving) an "Amended Motion for Sanctions" on May 6th.  (No. 10-2110 (Bankr. E.D. Pa.), Doc. Nos. 91, 91-1).  Several days later, on May 10th, the Millers filed (and served) a "Second Amended Motion for Sanctions." ('830 R. at 34).  These amended motions significantly supplemented the Millers' original Rule 9011 motion.  Remember, the Millers first moved for sanctions relatively early-on, before Kutkowski had even been deposed.  For example, the amended motions contained numerous arguments based on deposition testimony (including Kutkowski's) that had not yet been given at the time of the original motion.  (See id.).

Ettinger and Tsarouhis responded to the Second Amended Motion for Sanctions on May 23, 2011, and June 6, 2011.  In opposing the motion, Ettinger and Tsarouhis argued, in part, that the Millers had not complied with Rule 9011's safe harbor requirement, which is designed to give parties an opportunity to correct their errors before facing sanctions:

> A . . . Rule 9011 Motion . . . cannot be made unless there is some paper, claim or contention that can be withdrawn with [sic] the 21 day safe harbor.  At this point, after the hearing, there is no paper to be withdrawn or action that can be taken now that the case is determined.

('503 R. at 21 ¶ 95).

The Court held a hearing on the Second Amended Motion for Sanctions on June 20, 2011.  In the course of the hearing, Tsarouhis testified that, after Kutkowski's deposition, "we had reached out to Mr. Lightner [the Millers' attorney] in order to put this matter to bed, because we were satisfied primarily at that point that we would not be victorious on the merits of the underlying complaint."  (Hearing Tr. 124:5-11, June 20, 2011).  Tsarouhis also reiterated his safe harbor argument, expressing concern that much of the Second Amended Rule 9011 motion focused on events that occurred and information that came to light *after* the Millers initially filed

the motion.  (Id. at 126-29).

On October 24, 2011, the Bankruptcy Court announced its decision granting the Millers'

motion for sanctions "for all time after March 18, 2011."  (Hearing Tr. 26:11-16, Oct. 24, 2011).

Preliminarily, the Court addressed and rejected Ettinger's safe harbor argument:

> [T]he allegation that there is no usage of the safe harbor which is you give 21
> days' notice before you file a Rule 11 / Rule 9011 proceeding I agree is a
> mandatory procedural prerequisite.
>
> Defendants satisfied it.  The defendants filed a motion on January 31.  It was
> served on the -- they attached the certificate of service showing service. . . . It was
> withdrawn on February 1 and filed on February 23.  I find as a conclusion of law
> that that clearly satisfies the requirement that there be 21 days' notice before the
> operative motion is filed and prosecuted.
>
> As the plaintiffs point out, a letter wouldn't have done it.  What you need to do is
> file and serve or just serve the motion for 9011 sanctions.  The defendants did that
> and they withdrew it then because they I guess realized it was perhaps not done in
> the best way possible.  But they realized that that wasn't the operative motion, that
> one had to wait -- that they had to wait 21 days.
>
> The idea is after receiving the motion the plaintiffs have 21 days to think about
> deciding to withdraw their action to eliminate, ameliorate, reduce, whatever their
> downside, their damages . . . That's what it's for.  It wasn't utilized by the
> plaintiffs in this case.

(Id. at 3:12-4:17).

On the merits, as noted *supra*, the Court targeted March 18th (the Kutkowski deposition)

as the "linchpin" and "turning point" for its decision to impose sanctions.  (Id. at 14:18-24;

19:15-25).  Reviewing Kutkowski's testimony, the Court found "no evidentiary support for [the]

allegation that [the Millers] had spoken with a lawyer about discharge before they continued their

relationship with Mr. Ettinger" and characterized Ettinger's argument to the contrary as

"nonsense."  (Id. at 7:15-8:6).[4]  Specifically, the Court opined that "Mr. Kutkowski testified that

---

[4]At various points in the proceedings, the Court referred to Ettinger as "all that is properly
condemned by the public about lawyers," "obnoxious," "overbearing," "rude," "condescending,"

he didn't talk to [the Millers] anything about discharge.  That's in his deposition." (Id. at 20:1-18).  In other words, the Court granted the Rule 9011 motion because Ettinger (through Tsarouhis) insisted on pressing forward with the adversary complaint knowing "full well that [Kutkowski] didn't talk to the Millers about bankruptcy" and that the complaint lacked merit. (Id. at 14:18-24; see also id. at 21:11-18 ("After March 18, 2011, the plaintiffs decided not to withdraw their adversary proceeding seeking non-dischargeability.  And the reason is Mr. Kutkowski might have discussed bankruptcy.  He didn't recall. . . . There are lots of things he might have said.  His testimony is he didn't have any recollection of talking to them about bankruptcy.")).

> On November 4, 2011, the Court confirmed its rationale for imposing sanctions:
>
> I found that there was exposure under Rule 9011 in the plaintiff and the plaintiffs'
> counsel starting March 18, 2011 because that's the date on which Mr.
> Kutkowski's deposition was taken and the date on which as he testified Mr.
> Tsarouhis had at the very least grave concerns of the ability of their cause of
> action to go forward.

(Hearing Tr. 3:9-20, Nov. 4, 2011).  During this particular hearing, the Court heard testimony on the appropriate sanction for the aforementioned Rule 9011 violation.  Near the end of the hearing, Tsarouhis challenged the Court's characterization of Kutkowski's deposition testimony, asserting that at some point in the deposition, Kutkowski recalled that he *did* speak to Mr. Miller about bankruptcy.  (Id. at 49-52).  The Court agreed to look into that possibility.  (Id. at 52-53).

Three days later, after reviewing Kutkowski's deposition, the Court acknowledged that Kutkowski's testimony was not so black-and-white.  At one point, Kutkowski stated that he did not remember discussing bankruptcy with Mr. Miller.  But later on, Kutkowski changed course

---

"unprofessional," "disingenuous," and "evasive."  (Id. at 9:10-14; 15:5-17).  However, the Court was quick to point out that this "doesn't support a 9011 motion."  (Id. at 9:15-20).

and indicated that he probably did briefly discuss bankruptcy with Mr. Miller.  (Hearing Tr. 3-5, Nov. 7, 2011).  However, this newly-discovered equivocation by Kutkowski did not persuade the Court to revisit its decision to impose Rule 9011 sanctions because (1) the Court would have disregarded Kutkowski's about-face because Kutkowski provided "completely different answer[s]" to the same question in a short period of time, and (2) Tsarouhis did not bring-up this inconsistency during the trial.  (Id. at 4:16-5:24).  Under the circumstances, i.e., Kutkowski's flip-flop, the Court wondered "how someone could rely on that information" in continuing to prosecute an adversary complaint.  (Id. at 5:5-12).

Finally, on December 19, 2011, the Court held a hearing for the "sole purpose" of determining "the amount of sanctions, if any, to be awarded based upon the violation of Rule 9011 that [the Court] did find previously."  (Hearing Tr. 4:9-11, Dec. 19, 2011).  From the bench, the Court announced its decision, a $20,000 sanction imposed on "plaintiff and plaintiffs' counsel" and payable to the Millers' counsel.  (Id. at 15:1-7).  The Court memorialized the sanction in a written Order that same day.  This Order (from which all parties appeal) granted-in-part the Millers' Second Amended 9011 Motion for the reasons previously given.  ('830 Supp. R. at 5).  The Court also delineated the proper process for paying the sanction, ordering "pursuant to Federal Rule of Bankruptcy Procedure 9011 and Section 105(a) of the Bankruptcy Code that Plaintiff [Ettinger & Associates], Plaintiff's principal, Neil Ettinger, Esquire, and Plaintiff's counsel, Demetrious H. Tsarouhis, Esquire, shall pay, jointly and severally, within fifteen (15) days of this Order, to Defendants/Debtors' attorney . . . the amount of $20,000, which amount shall be distributed between Defendants/Debtors and their counsel . . ." (Id.).  As far as we can tell, this fleeting reference to Section 105(a) marks the first time that either the Court or the Millers mentioned any sanctioning mechanism other than Rule 9011.

9

II.   Legal Analysis

    A.   Standard of Review

    We have jurisdiction over these appeals from the Bankruptcy Court's final order of December 19, 2011 pursuant to 28 U.S.C. § 158.  As a federal district court, "we review the bankruptcy court's legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for abuse thereof."  In re Am. Classic Voyages Co., 405 F.3d 127, 130 (3d Cir. 2005) (citation omitted); see also In re Heritage Highgate, Inc., No. 11–1889, 2012 WL 1664174, at *4 (3d Cir. May 14, 2012) (precedential) (confirming that "the Bankruptcy Court's findings of fact are reviewed only for clear error, while legal determinations are reviewed *de novo*.") (citation omitted).  As such, we review the Bankruptcy Court's overall decision to sanction for abuse of discretion, but we will not set aside the Court's factual findings unless clearly erroneous.  Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc., 57 F.3d 1215, 1223 (3d Cir. 1995) (noting that under Bankruptcy Rule 8013, "in reviewing the bankruptcy court's factual findings we are to give 'due regard' to the opportunity of that court to judge first-hand the credibility of witnesses.").  "An abuse of discretion occurs when the court bases its opinion on a clearly erroneous finding of fact, an erroneous legal conclusion, or an improper application of law to fact."  In re Olick, 466 B.R. 680, 688 (E.D. Pa. 2011) (quoting LaSalle Nat'l Bank v. First Conn. Holding Grp., L.L.C. XXIII, 287 F.3d 279, 288 (3d Cir. 2002)).

    Here, the Bankruptcy Court concluded that, as a matter of law, the Millers had satisfied Rule 9011's safe harbor requirement.  The parties do not dispute the factual underpinnings of this legal determination.  In other words, all agree that the Millers initially filed and served their (first) Rule 9011 motion on January 31, 2011; withdrew that motion the next day; and then re-filed (and re-served) a substantively identical motion on February 23, 2011.  The disagreement

centers on whether this withdraw-and-re-file procedure employed by the Millers' attorney afforded Ettinger and Tsarouhis fair process under Rule 9011 with respect to the sanctions the Court eventually awarded.  The Bankruptcy Court thought it did.  Reviewing this legal determination *de novo*, as we must, we respectfully disagree and therefore vacate the Court-imposed sanction.

As explained herein, we do not believe Ettinger and Tsarouhis received fair notice of "precisely the conduct claimed to violate" Rule 9011.  See Advisory Committee's Notes, 1993 Amendments to Fed. R. Civ. P. 11.[5]  First of all, the act of withdrawing a Rule 9011 motion (as the Millers did in this case) sends ambiguous signals.  Perhaps the moving party withdrew the motion in order to cure a safe harbor violation, fully intending to re-file it three weeks later.  The Bankruptcy Court believed that to be the case here.  But perhaps the moving party withdrew the motion honestly believing that sanctions were not yet warranted.  Therefore, one facing a withdrawn Rule 9011 motion (as Ettinger and Tsarouhis faced here) would not likely know, *ex ante*, whether the safe harbor period was running (and thus, whether to consider abandoning the complaint).

And even if the Millers' first motion triggered the safe harbor period, the Millers did not wait the required twenty-four (24) days after service by mail before re-filing the motion with the Court.  What's more, the Bankruptcy Court did not impose sanctions based on the Millers' initial motion or the conduct described therein; instead, the Court faulted Ettinger and Tsarouhis for

---

[5]The Advisory Committee's Notes on the 1997 Amendments to the Federal Rules of Bankruptcy Procedure (which brought the Bankruptcy Rules in-line with the Civil Rules with respect to sanctions) direct us to consult the Notes accompanying the 1993 Amendments to Civil Rule 11 for guidance.  More broadly, Civil Rule 11 jurisprudence may guide our analysis of Bankruptcy Rule 9011-related issues.  See In re Taylor, 655 F.3d 274, 282-83 n.12 (3d Cir. 2011) ("Cases decided pursuant to Fed. R. Civ. P. 11 apply to Rule 9011.") (citation omitted).

conduct that occurred *after* March 18, 2011 and *after* the filing of the aforementioned motions, i.e., marching forward with the adversary proceeding after Kutkowski's deposition.  The Millers raised the Kutkowski deposition issue for the first time in their amended motion for sanctions *after the trial*.  The Court then granted the Millers' second amended motion for sanctions, which no one has argued satisfies Rule 9011's safe harbor (and rightfully so, given that the Millers filed the motion *after the case had been decided*, once it was too late for Ettinger and Tsarouhis to do anything about the particular offensive conduct for which they were ultimately sanctioned).  Under the convoluted procedural posture of this case, we cannot say that the Millers complied with Rule 9011's safe harbor.

    B.    The Millers' Withdraw-and-Re-File Tactics Do Not Satisfy Rule 9011's Safe Harbor

    Rule 9011's safe harbor provides that a "motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected."  Fed. R. Bankr. P. 9011(c)(1)(A).  The Third Circuit demands strict compliance with this rule: "If the twenty-one day period is not provided, the motion *must* be denied."  In re Schaefer Salt Recovery, Inc., 542 F.3d 90, 99 (3d Cir. 2008) (emphasis added).  "The purpose of the safe harbor is to give parties the opportunity to correct their errors, with the practical effect being that a party cannot delay serving its . . . Rule 9011 motion . . . until conclusion of the case (or judicial rejection of the offending contention)."  Id. (citation and internal quotation marks omitted); see also Roth v. Green, 466 F.3d 1179, 1192 (10th Cir. 2006) (remarking that "[t]he safe harbor provisions were intended to protect litigants from sanctions whenever possible in order to mitigate Rule 11's chilling effects, formalize

12

procedural due process considerations such as notice for the protection of the party accused of sanctionable behavior, and encourage the withdrawal of papers that violate the rule without involving the . . . court.") (citation omitted).

Here, the Millers filed and served their first Rule 9011 motion ("Motion 1") on January 31, 2011; withdrew Motion 1 the next day; and re-filed and re-served a substantively identical motion ("Motion 2") on February 23, 2011.  The few courts that have written on this topic (whether re-filing after twenty-one days satisfies the safe harbor provision) have split, oftentimes deciding the question without much analysis.  Compare Tahfs v. Proctor, 316 F.3d 584, 589 (6th Cir. 2003) (suggesting that re-filing a Rule 11 motion for sanctions may cure previous non-compliance with the Rule's safe harbor provision); Jefferson v. Mass. Mut. Life Ins. Co., No. 3:07-0715, 2008 WL 4724326, at *6  (M.D. Tenn. Oct. 24, 2008) ("Arguably, Defendant could withdraw its Motion for Sanctions, comply with the safe harbor provisions of Rule 11, and then refile its Motion."); and Muhammad v. Louisiana, Nos. 99–3742, 99–2694, 2000 WL 1876350, at *2-3 (E.D. La. Dec. 21, 2000) (noting that, for safe harbor compliance purposes, "it probably would have been preferable for defendants' counsel to simply withdraw the Rule 11 motion entirely and refile it after the safe harbor period had run.") with In re Stuckey, Proc. No. 09-1046, 2010 Bankr. LEXIS 2188, at *1-2 (Bankr. N.D. Ind. June 2, 2010) (improperly filing prior sanctions motion cannot satisfy safe harbor provision with respect to renewed motion because the safe harbor would be rendered "meaningless if the very act of violating it — by prematurely filing a motion for sanctions — could serve as the foundation for refiling that same motion several weeks later."); In re New River Dry Dock, Inc., 461 B.R. 642, 646 (Bankr. S.D. Fla. 2011) (same); Zhu v. Fed. Hous. Fin. Bd., No. 04-2539, 2007 WL 675646, at *4 (D. Kan. Mar. 1, 2007) (movant cannot use compliance with safe harbor in earlier motion for sanctions to avoid

separate compliance with renewed motion); and Carruthers v. Flaum, 450 F. Supp. 2d 288, 320
& n.16 (S.D.N.Y. 2006) ("Filing the same motion twice, without giving plaintiff an opportunity
to withdraw the challenged contention, does not fall within the letter of the safe harbor
procedure.").

We believe that the procedure employed here (filing and serving Motion 1 –>
withdrawing Motion 1 without explanation –> filing and serving identical Motion 2 some weeks
later) fails to satisfy Rule 9011's safe harbor, either in letter or in spirit.  We reach this conclusion
for several reasons.  First, the text of Rule 9011 suggests the result.  According to the Rule, the
movant must serve and then file *the same motion* in order to comply with the safe harbor.  See
Fed. R. Bankr. P. 9011(c)(1)(A) ("*The motion* for sanctions may not be filed with or presented to
the court unless, within 21 days after service of *the motion* . . . the challenged paper, claim,
defense, contention, allegation, or denial is not withdrawn or appropriately corrected . . .")
(emphasis added).  That did not happen here.  The Millers served (and filed) Motion 1, and then
summarily withdrew it the next day.  Approximately three weeks later, the Millers then filed (and
served) Motion 2.  While Motion 1 and Motion 2 contained the same allegations and arguments,
they were different motions nonetheless.  As such, the Millers cannot rely on the service of
Motion 1 to satisfy Rule 9011's safe harbor requirement with respect to Motion 2.  In this regard,
we agree with the Carruthers court that "[f]iling the same motion twice, without giving plaintiff
an opportunity to withdraw the challenged contention, does not fall within the letter of the safe
harbor procedure." 450 F. Supp. 2d at 320 & n.16.

This may seem like hair-splitting, and indeed it is.  But in this case, our fine-grained
parsing of Rule 9011's language best honors the purposes of the Rule: "giv[ing] parties the
opportunity to correct their errors," Schaefer, 542 F.3d at 99, and "formaliz[ing] procedural due

process considerations such as notice for the protection of the party accused of sanctionable behavior," Roth, 466 F.3d at 1192.  Consider the Millers' actions through the eyes of Ettinger and Tsarouhis, the parties-to-be-sanctioned.  Ettinger and Tsarouhis received a motion for Rule 9011 sanctions that was immediately withdrawn without explanation.  The withdrawal of the motion injected significant uncertainty into the situation.  Did the Millers withdraw the motion intending to re-submit it later?  Or did the Millers simply think better of filing the sanctions motion at all?  Or perhaps the Millers wanted to gather more information before moving for sanctions?  In light of this uncertainty, we cannot say that the withdrawn motion sufficed to give Ettinger and Tsarouhis a meaningful opportunity to reflect on the proprietary of their adversary proceeding or sufficient notice that, by going forward, they would risk facing Rule 9011 sanctions.

So what could the Millers have done to avoid this predicament?  After unconditionally withdrawing Motion 1, the Millers should have served (but not filed) Motion 2.  By re-serving the renewed motion, the Millers would have placed Ettinger and Tsarouhis on notice that the first filing was simply a mistake and that Rule 9011's safe harbor period was indeed running.  In other words, by re-serving the just-withdrawn motion, the Millers would have eliminated the ambiguity they created by withdrawing Motion 1.  The Millers would then have been free to file Motion 2 with the Court once the safe harbor period expired.

C.     Even if the Service of Motion 1 Triggered the Safe Harbor Clock, the Millers
       Filed Motion 2 Too Soon

Rule 9011 typically gives a party threatened with sanctions "21 days after service of the motion" to withdraw or correct the challenged material.  Fed. R. Bankr. P. 9011(c)(1)(A).  However, "[w]hen a party elects to serve a motion for sanctions by mail, it must allow an

additional three days for a response before filing the motion with the court." In re Kelsey, Nos. 94–10415, 00–1034, 2001 WL 34050741, at *3 (Bankr. D. Vt. Oct. 23, 2001).  In other words, the twenty-one (21) day safe harbor becomes a twenty-four (24) day safe harbor.

  This three-day extension comes from Federal Rule of Bankruptcy Procedure 9006, which by its terms applies "in computing any time period specified in" the Bankruptcy Rules.  Fed. R. Bankr. P. 9006(a).  Pursuant to Rule 9006(f), "[w]hen there is a right or requirement to act or undertake some proceedings within a prescribed period after service and that service is by mail . . . three days are added after the prescribed period would otherwise expire under Rule 9006(a)." Rule 9011 gives a party served with a sanctions motion the "right" to "act . . . within a prescribed period [21 days] after service," i.e., the right to fix the allegedly-sanctionable problem. Therefore, Rule 9006(f)'s three-day extension after service by mail plainly applies to Rule 9011's safe harbor provision.  See, e.g., New River Dry Dock, 461 B.R. at 645-46 & n.13 (applying Rule 9006(f)'s three-day extension to Rule 9011's safe harbor provision); In re Akl, Adversary No. 07–10026, 2010 WL 5315967, at *1 (Bankr. D. Colo. Dec. 21, 2010) (same); see also Blumberg v. Gates, 152 Fed. App'x 652, 653 (9th Cir. 2005) (same in the Rule 11 context); Chaunheng Mgmt. v. Hartford's Twin City Fire Ins. Co., No. 11–cv–06319, 2012 WL 1622673, at *3-4 (E.D. Pa. May 9, 2012) (same in the Rule 11 context).

  Here, as discussed supra, we have already determined that the service of the Millers' first Rule 9011 motion on January 31, 2011 did not start the safe harbor clock.  However, even if it did, the Millers violated the safe harbor provision by failing to give Ettinger and Tsarouhis twenty-four (24) days to consider their options, as required by the combination of Rules 9006 and 9011.  Taking January 31st as the date of service, Rule 9011 would normally have provided Ettinger and Tsarouhis with a twenty-one (21) day safe harbor, which means that they had until

Monday, February 21, 2011 to act.  However, February 21, 2011 was a federal holiday ("Washington's Birthday"), which extended the safe harbor until February 22nd.  <u>See</u> Fed. R. Bankr. P. 9006(a)(1)(C), (a)(6)(A).  And since the Millers served the motion by mail, the safe harbor was extended by another three days until February 25, 2011.  <u>See</u> Fed. R. Bankr. P. 9006(f).  The Millers re-filed their Rule 9011 motion with the Bankruptcy Court on February 23, 2011, several days before the safe harbor period expired.  For this additional and independent reason, the Millers' Rule 9011 motions were procedurally defective, so the Bankruptcy Court's sanction cannot stand.

> D.   <u>The Second Amended Rule 9011 Motion Did Not Comply With the Safe Harbor Requirement</u>

We see yet another procedural problem with the Millers' Rule 9011 motion.  As we explained *supra*, Rule 9011's safe harbor provision is "motion specific," so to speak.  In other words, the Rule demands that each operative Rule 9011 motion comply with the safe harbor requirement *on its own accord*.  The moving party cannot use compliance with the safe harbor in an earlier motion for sanctions to avoid separate compliance in a later filed motion.  <u>Zhu</u>, 2007 WL 675646, at *4.

This makes perfect sense considering that the safe harbor was designed  "[t]o stress the seriousness of a motion for sanctions and to *define precisely the conduct claimed to violate the rule . . .*"  Advisory Committee's Notes, 1993 Amendments to Fed. R. Civ. P. 11 (emphasis added).  We would severely undermine this principle by permitting the service of one motion based on one set of facts to satisfy the safe harbor requirement with respect to a later motion based on a different set of facts.  In a situation such as this, the party facing sanctions would not know "precisely" what conduct put him at risk until it was too late.

A contrary rule would raise significant due process concerns. As the Third Circuit recently reiterated, "[d]ue process in the imposition of Rule 9011 sanctions requires 'particularized notice.'" Taylor, 655 F.3d at 286 (citation omitted). Although the Third Circuit has not "rigorously defined" the meaning of "particularized notice," it likely requires "sufficient, advance notice of exactly which conduct was alleged to be sanctionable," or at the very least notification as to "the reasons why sanctions are under consideration." Id. (citations omitted). The service of a Rule 9011 motion (or any paper, for that matter) can only provide notice of whatever's in the motion. It does not provide any notice, much less "particularized" or "sufficient" notice, with respect to conduct not described in the motion (for example, events that occur well after the motion was originally filed).

With that in mind, consider the Bankruptcy Court's imposition of sanctions in this case. Although the Millers' pre-trial motions for sanctions do not satisfy Rule 9011's safe harbor for the reasons set forth above, suppose they did. These motions would still only put Ettinger and Tsarouhis on notice that their conduct *up to the date of the filing of the motions* (February 23, 2011, at the latest) might expose them to Rule 9011 sanctions. It was not until May of 2011, after the trial, when the Millers filed their amended (and second amended) motions for sanctions, that Ettinger and Tsarouhis had particularized notice that they might face sanctions for pressing onward after Kutkowski's March 18th deposition. In other words, the Bankruptcy Court sanctioned Ettinger and Tsarouhis for conduct that had not even occurred at the time the Millers filed and served their initial Rule 9011 motions, but allowed the Millers to rely on these preliminary motions to satisfy the safe harbor requirement. We think that was improper because the Millers' early motions did not provide adequate notice with respect to the conduct for which the Court eventually imposed sanctions.

18

And it is evident that, standing alone, the Millers' second amended motion for sanctions (the motion the Bankruptcy Court actually granted) does not satisfy Rule 9011's safe harbor.  For one thing, the Millers filed and served this motion on the same day, May 10, 2011.  They did not wait the requisite twenty-one (or twenty-four) days between service and filing.  In addition, the Millers filed and served the motion for sanctions *after* the trial on Ettinger's adversary complaint and *after* the Bankruptcy Court had already ruled in the Millers' favor.  Therefore, by the time the Millers filed this motion, it was too late for Ettinger and Tsarouhis to do anything about their allegedly offensive conduct; they had already taken the matter to trial and lost.  As such, the Millers' second amended motion for sanctions did not (and indeed could not, given when it was served) afford Ettinger and Tsarouhis the safe harbor mandated by Rule 9011.  See Schaefer, 542 F.3d at 99 (opining that "[t]he purpose of the safe harbor is to give parties the opportunity to correct their errors, with the practical effect being that a party cannot delay serving its . . . Rule 9011 motion . . . until conclusion of the case (or judicial rejection of the offending contention).") (citation and internal quotation marks omitted).

We realize that, after the trial on the merits, the Bankruptcy Court explicitly ordered the Millers to file an amended Rule 9011 motion.  The Millers obeyed, only to find out now that the court-ordered motion violates the Rule's safe harbor.  While we sympathize with the Millers' plight, we cannot allow a court order to trump a Federal Rule.  See 10-9011 Collier on Bankruptcy ¶ 9011.05[1][b] (16th ed.) ("The fact that a court has granted leave to move for sanctions may not be used to circumvent the 'safe harbor' prerequisite.") (citing Photocircuits Corp. v. Marathon Agents, Inc., 162 F.R.D. 449, 452 (E.D.N.Y. 1995)).

And in any event, the Millers could have avoided this safe harbor problem by timely serving and then filing an amended motion for sanctions prior to the trial on Ettinger's complaint.

19

If the Millers believed that Ettinger and Tsarouhis had no basis for pressing onward after Kutkowski's deposition, then the Millers should have said so in a renewed Rule 9011 motion before the trial.  That way, Ettinger and Tsarouhis could have contemplated dropping the complaint (for at least twenty-one days, as required by the Rule) in light of the Millers' new allegations.  We recognize that parties seeking sanctions may find it inconvenient to re-serve and re-file (three weeks later) their Rule 9011 motions whenever they wish to add newly-discovered objectionable conduct, but that is what the safe harbor demands.  See Saldibar v. Delray One, Inc., No. 07-80608, 2008 WL 3540518, at *2 (S.D. Fla. Aug. 12, 2008) (holding that a party may have to serve opposing counsel with a sanctions motion in the middle of a jury trial in order to comply with the safe harbor even though doing so would be inconvenient).

     E.     The Bankruptcy Court Relied Solely on Rule 9011 to Impose Sanctions

The Bankruptcy Court arguably had several mechanisms at its disposal to sanction Ettinger and Tsarouhis.  Although the Court imposed sanctions based upon the Millers' Rule 9011 motion, the Court could have considered sanctioning the offending parties (1) on the Court's own initiative pursuant to Rule 9011(c)(1)(B); (2) using the Court's inherent power to sanction; or (3) under 11 U.S.C. § 105.  See, e.g., In re Antonelli, No. 11–20255, 2012 WL 280722, at *12-15 (Bankr. D.N.J. Jan. 30, 2012) (discussing sanctioning tools available to a bankruptcy court); but see Schaefer, 542 F.3d at 105 (finding it unnecessary to address all the ways in which the various sanctioning mechanisms differ in scope and impact).  None of these alternate sanctioning mechanisms contain a safe harbor provision.  See 10-9011 Collier on Bankruptcy ¶ 9011.05[1][b] (noting that the safe harbor provision does not apply when a court imposes sanctions pursuant to § 105, the court's inherent power, or on its own initiative under Rule 9011).

But the Court sanctioned Ettinger and Tsarouhis by granting the Millers' second amended Rule 9011 motion (which failed to comply with the Rule's safe harbor), not by any of these other means.  For example, Rule 9011(c)(1)(B) permitted the Court to "enter an order describing the specific conduct that appears to" be sanctionable and "direct[] an attorney, law firm, or party to show cause why" it is not.  The Bankruptcy Court did not do that in this matter.  The closest thing we see to an order to show cause is the Court's April 20, 2011 scheduling order directing the Millers to file a revised Rule 9011 motion.  But that order certainly did not describe the "specific conduct" that appeared to be sanctionable, as required by the Rule (and necessary to afford the sanctioned party with due process).  <u>See</u> <u>Taylor</u>, 655 F.3d at 286 ("Due process in the imposition of Rule 9011 sanctions requires 'particularized notice.'") (citation omitted).

The Court did mention § 105(a) of the Bankruptcy Code in its December 19, 2011 order granting the Millers' second amended Rule 9011 motion.  By its terms, § 105(a) authorizes a bankruptcy court to issue orders "necessary or appropriate to carry out" the bankruptcy laws, and to take any action "necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."  Although the Third Circuit has cautioned that § 105(a) has a "limited scope" and "does not create substantive rights that would otherwise be unavailable under the Bankruptcy Code," <u>In re Joubert</u>, 411 F.3d 452, 455 (3d Cir. 2005) (internal quotation marks and citation omitted), some courts see § 105(a) as a viable independent basis for sanctions.

Considering the circumstances (the Court's one-time reference to § 105(a) two (2) months after first granting the Millers' Rule 9011 motion on the merits), it seems to us that the Court relied upon § 105(a) solely to direct the manner of distributing the $20,000 sanction, not as a substantive basis for the sanction itself.  In other words, the Court based its sanction on Rule 9011 but used § 105(a) to "enforce or implement" the Court's order that Ettinger, his firm, and

Tsarouhis pay $20,000 to the Millers' counsel within fifteen (15) days of the order.  To the extent the Bankruptcy Court sought to impose sanctions based on § 105, independent of Rule 9011, such a sanction would have been improper.  Ettinger and Tsarouhis had no notice that the Court was contemplating sanctions based on § 105(a).  See Adams v. Ford Motor Co., 653 F.3d 299, 308-09 (3d Cir. 2011) (holding that the particularized notice required to comport with due process "will usually require notice of the precise sanctioning tool that the court intends to employ.") (quoting Fellheimer, 57 F.3d at 1225).

Since the Bankruptcy Court based its decision to sanction on Rule 9011, we will not opine in the first instance on whether sanctions grounded in some other authority would have been appropriate.  We do note, however, that conduct properly sanctioned under Rule 9011 might not warrant inherent power sanctions.  See Fellheimer, 57 F.3d at 1225 ("Invocation of a federal court's inherent power to sanction requires a finding of bad faith . . . The imposition of Rule 11 sanctions, on the other hand, requires only a showing of objectively unreasonable conduct.") (citations omitted).

III.   Conclusion

For the aforementioned reasons, we REVERSE the Bankruptcy Court's decision to impose sanctions and VACATE the Court's Order of December 19, 2011 accordingly.  Because it is too late to cure the safe harbor violation, we see no reason to remand this matter for further proceedings.  The Clerk of Court is directed to close these two matters (12-cv-503 and 12-cv-830) for statistical purposes.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.

22